UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. THOMAS, | No. 2:14-cv-1878-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is granted.

I.     BACKGROUND

Plaintiff filed applications for a period of disability, DIB and SSI, alleging that he had been disabled since November 1, 2009.[1] Administrative Record ("AR") 223-240. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 160-165, 167-172. On

---

[1] Plaintiff subsequently amended his alleged onset date to March 10, 2010.

1

September 13, 2012, a hearing was held before administrative law judge ("ALJ") Sara Gillis. *Id.* at 31-92. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.*

On December 21, 2012, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[2] *Id.* at 12-25. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since November 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant has the following severe impairments: diabetes mellitus, morbid obesity, insomnia, a history of stent placement, sleep apnea and a history of cervical strain (20 CFR 404.1520(c) and 416.920(c)).

    * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

    * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for the following limitations: the claimant is unable to climb ladders, ropes or scaffold. He may occasionally stoop and crouch. The claimant is limited to frequent overhead lifting and reaching. The claimant must avoid concentrated exposure to work hazards, such as moving machinery and unprotected heights.

    * * *

6. The claimant is capable of performing past relevant work as a customer service clerk, business manager/store owner, display merchandiser and teacher/childcare. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

    * * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 14-24.

Plaintiff's request for Appeals Council review was denied on June 23, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) finding at step two that his mental impairments were nonsevere, and (2) failing to account for all of plaintiff's impairments in assessing his residual functional capacity ("RFC").

A. The ALJ's step-two findings is supported by substantial evidence

Plaintiff argues that the ALJ erred in finding that his depression, somatization disorder and anxiety disorder were nonsevere impairments. ECF No. 15 at 6-12. Specifically, plaintiff contends that the ALJ impermissibly (1) disregarded therapy records, (2) rejected the opinion of the examining physician without sufficient justification, and (3) improperly assessed plaintiff's limitations as required by 20 C.F.R. §§ 404.1520a and 416.920a. ECF No. 15 at 6-12.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1502(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities."

4

20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

### 1. Therapy Records

Plaintiff first contends that the ALJ erred at step-two by giving no weight to treatment records from Kathleen Van Wie, LCSW. ECF No. 15 at 6-7. Ms. Van Wie treated plaintiff for depression, stress, anxiety, and sleep disturbance from August 1998 to October 2001. AR 1079-1262. In assessing plaintiff's mental impairments at step-two, the ALJ gave no weight to Ms. Van Wie's treatment reports "as she treated [plaintiff] for depression/stress 8-10 years prior to the period at issue." *Id.* at 17.

"Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (The ALJ correctly rejected "evidence on the ground that it is not probative . . . because it is prior to the relevant time period . . . ."). Plaintiff claims that he became disabled on November 1, 2009, more than eight years after the last treatment record from Ms. Van Wie. Given that these records pertain to treatment provided well before plaintiff's alleged onset date, they are not probative evidence of plaintiff's functional impairments at the time he allegedly became disabled. *See Carmickle*, 533 F.3d at 1164–65 (indicating that evidence from "well before" the alleged onset date is not probative). Accordingly, the ALJ properly gave no weight to this evidence.

### 2. Dr. Regazzi's Opinion

Plaintiff next argues that the ALJ's step-two finding is not supported by substantial evidence because the ALJ improperly rejected the opinion from examining physician Dr. Regazzi. ECF No. 15 at 7-10.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know

1   and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.
2   1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to
3   considering its source, the court considers whether (1) contradictory opinions are in the record;
4   and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a
5   treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81
6   F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional
7   may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.
8   *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is
9   contradicted by a supported examining professional's opinion (e.g., supported by different
10  independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d
11  1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).
12  However, "[w]hen an examining physician relies on the same clinical findings as a treating
13  physician, but differs only in his or her conclusions, the conclusions of the examining physician
14  are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

15  Plaintiff underwent a psychological evaluation, which was performed by Michelina
16  Regazzi, Ph.D. AR 1074-1078. Dr. Regazzi diagnosed plaintiff with somatization disorder,
17  dyssomnia, depressive disorder, and anxiety disorder. *Id.* at 1077. It was her opinion that
18  plaintiff had marked impairments in maintaining attention and concentration; understanding
19  remembering and carrying out complex instructions; and completing a normal workday without
20  interference from symptoms. *Id.* She also opined that plaintiff had moderate impairments in
21  understanding, remembering, and carrying out simple instructions; maintaining adequate pace;
22  interacting appropriately with supervisors, coworkers, and the public. *Id.* at 1077-1078.

23  A second psychological evaluation was performed by Frank Weber, Ph.D. *Id.* at 964-969.
24  Dr. Weber diagnosed plaintiff with major depressive disorder, recurrent, moderate (by history),
25  and generalized anxiety disorder (by history). *Id.* at 968. He opined that plaintiff was only
26  minimally impaired in his ability to understand, remember, and carry out an extensive variety of
27  technical and/or complex job instructions; maintain concentration, attention, and pace; respond
28  appropriately to co-workers, supervisors, and the public; respond appropriately to usual work

1 situations; deal with changes in a routine work setting; and interact in socially acceptable ways.
2 *Id*. at 968-969.

3 The record also contains opinions from two state agency non-examining physicians, Drs.
4 Regan and Gottschalk. *Id*. at 102-103, 148-149. Both physicians opined that plaintiff's mental
5 impairments were nonsevere. *Id*.

6 In determining that plaintiff's mental impairments were not severe, the ALJ accorded little
7 weight to Dr. Regazzi's opinion, while giving great weight to Dr. Weber and the state agency
8 physicians' opinions. *Id*. at 16-17. Since Dr. Regazzi's opinion was contradicted by the other
9 medical opinions of record, the ALJ was required to give specific and legitimate reasons for
10 rejecting her opinion. *See Orn v. Astrue*, 495 F.3d at 632.

11 The ALJ provided multiple reasons for rejecting Dr. Regazzi's opinion. First, the ALJ
12 found that Dr. Regazzi's opinion was inconsistent with her own findings regarding plaintiff's
13 daily activities and normal clinical observations. AR 17. An ALJ may reject a physician's
14 opinion that is inconsistent with other medical evidence, including the physician's own treatment
15 notes. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Regazzi's report indicated
16 that plaintiff played games online, assisted with cooking and household chores, drove a car, and
17 "that when he has the energy he does computer graphics and is teaching himself Photo Shop."
18 AR at 1075-1076. Plaintiff obtained a college degree, although it took him 13 years to complete
19 "due to his sleep issue, which has improved by using [a CPAP] machine." *Id*. at 1076.

20 The ALJ properly concluded that Dr. Regazzi's opinion was inconsistent with these daily
21 activities. For instance, Dr. Regazzi opined that plaintiff had marked limitations in attention and
22 concentration as well as in understanding, remembering, and carrying out complex instructions,
23 while also observing that plaintiff was teaching himself graphic design and Photoshop. *Id*. at
24 1076-1077. The ALJ reasonably concluded that Dr. Regazzi's opinion was at odds with the
25 ability to perform such activities.

26 The ALJ also noted that Dr. Regazzi's clinical observations did not support the assessed
27 limitations. *Id*. at 17. Dr. Regazzi reported that plaintiff was cooperative, spoke with no
28 articulation problems, responded promptly and fully, expressed his thoughts in a clear and logical

7

1  fashion, had normal range of affect, but an anxious mood. *Id*. at 1076. There was also no
2  evidence of psychotic symptoms and plaintiff did not express any thoughts of harm towards
3  himself of others. *Id*. These generally normal findings are inconsistent with Dr. Regazzi's
4  opinion that plaintiff had severe mental impairments.
5        The ALJ also observed that Dr. Regazzi's opinion "contrasts sharply with assessments of
6  both Weber and treating physicians, the latter of which found the claimant is doing well on
7  psychotropic medications." *Id*. at 17. Plaintiff argues that the difference with Dr. Weber's
8  opinion alone cannot be a basis for rejecting Dr. Regazzi's opinion, and that his treating
9  physicians reference to "doing well" on medication "more likely means medication helps than it
10 means anything so precise as nonseverity." ECF No. 15 at 9.
11       Plaintiff's argument mischaracterizes the ALJ's decision. The ALJ did not rely solely on
12 Dr. Weber's opinion in finding that plaintiff's mental limitations were non-severe. The ALJ
13 specifically gave great weight not only to Dr. Weber's opinion, but also to the opinions provided
14 by the agency physicians, who each indicated that plaintiff's mental impairments were not severe.
15 AR 16. Given that Dr. Weber's opinion was consistent with the other medical opinions of record,
16 the ALJ permissibly adopted Dr. Weber's opinion over the Dr. Regazzi's opinion. *See* 20 C.F.R.
17 §§ 404.1527(c)(4) and 416.927(c)(4) ("the more consistent an opinion is with the record as a
18 whole, the more weight we will give to that opinion"); 20 C.F.R. §§ 404.1513(c) (findings by
19 state agency physicians constitute proper evidence from non-examining sources); SSR 96–6p
20 ("State agency medical . . . consultants are highly qualified physicians . . . who are experts in the
21 evaluation of the medical issues in disability claims."); *Thomas v. Barnhart*, 278 F.3d 947, 957
22 (9th Cir. 2002) ("opinions of nontreating or non-examining physicians may also serve as
23 substantial evidence when the opinions are consistent with independent clinical findings or other
24 evidence in the record").
25       Furthermore, plaintiff's quarrel over what his treating physicians meant by "doing well"
26 on medication, is based on conjecture and ignores statements made in his medical records.
27 Those records acknowledge that plaintiff was seeking SSI based on insomnia, depression, and
28 anxiety, but indicate that his past psychiatrists did not believe his impairments warranted

disability benefits. *Id*. at 781. Plaintiff's treating physician, Dr. Doolittle, noted that plaintiff had poor compliance with following up with his psychiatrist, and even stated that he did not feel conformable providing long term disability. *Id*. at 783. He also noted no objective evidence of depression, and that all symptoms were subjectively reported. *Id*. Thus, regardless of the precise meaning of "doing well" on medication, it is clear from the records that plaintiff's treating physicians did not agree with Dr. Regazzi's opinion.[3]

Accordingly, the ALJ provided legally sufficient reasons for rejecting the severe limitations assessed by Dr. Regazzi in favor of the majority view that plaintiff's mental impairments were nonsevere.

### 3. Psychiatric Review Technique

Plaintiff also argues that the ALJ's review of plaintiff's mental impairments under the Psychiatric Review Technique should be rejected. ECF No. 15 at 10-11.

When a claimant alleges disability due to a mental impairment, the Commissioner's regulations require the ALJ to follow a special psychiatric review technique in reviewing the claim. 20 C.F.R. § 404.1520a. The ALJ must first determine whether a medically determinable mental impairment exists (20 C.F.R. § 404.1520a(b)), and then rate the degree of functional limitation in four broad areas (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) (20 C.F.R. § 404.1520a(c)). These steps are documented in a Psychiatric Review Technique Form ("PRTF"), and the ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique" and "must include a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e). Thus, "the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a narrative rationale, instead of the checklist of . . . conclusions found in a PRTF." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (quotation marks omitted).

---

[3] None of plaintiff's treating physicians provided an opinion as to plaintiff's specific mental limitations. Given the comments in his treatment records, it is not surprising that plaintiff did not submit a mental RFC assessment from a treating source in support of his application for SSI.

Here, plaintiff does not, nor could he, dispute that the ALJ provided a narrative rationale of his findings as to the degree of plaintiff's limitations in each of the functional areas. Instead, plaintiff's contention that the ALJ erred in performing the Psychiatric Review Technique is based heavily on his contention that the ALJ erred in rejecting Dr. Regazzi's opinion. As explained above, the ALJ appropriately disregarded her opinion. Plaintiff also appears to argue that the ALJ's finding that plaintiff only had mild limitations in the first three categories impermissibly relied on "non-medical facts," as opposed to medical evidence. The argument completely ignores the ALJ's reliance on Dr. Weber's opinion and opinions from the state agency physicians.

Lastly, plaintiff also appears to contend that the ALJ failed to consider his sleep disorder in finding no more than mild impairments in mental functioning. ECF No. 15 at 11 (As for "activities of daily living, the decision not only exalts activities [that] don't even disprove *disability*, but *disregards* [plaintiff's] inability to perform them except in a manner radically untethered from the diurnal clock."). Despite plaintiff's insomnia and sleep apnea, which was documented in the medical record, all medical opinions, with the exception of Dr. Regazzi's opinion, concluded that plaintiff's mental impairments were not severe. Furthermore, the ALJ specifically found that plaintiff's allegations that his insomnia and sleep apnea significantly disrupted his ability to function were not credible, noting that he sought little treatment during for this condition during the period at issue. AR 22-23; *see Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997) (an ALJ my discredit a plaintiff's subjective complaints based on an unexplained or inadequately explained failure to seek treatment). Thus, the ALJ did not fail to account for plaintiff's sleep issues in assessing the severity of his mental impairments.

For the foregoing reasons, the ALJ applied the proper legal standard at step two and his findings are supported by substantial evidence.

B.     The ALJ's RFC is supported by substantial evidence

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for plaintiff's diabetes mellitus, morbid obesity, insomnia, history of stent placement, sleep apnea and history of cervical strain, all impairments found to be severe at step-two. ECF No. 15 at 12-14. Plaintiff, however, fails to draw the distinction

between finding an impairment severe at step-two and determining an individual's RFC. The second step severity determination is merely means that plaintiff has satisfied a de minimis screening test for disposing of claims which do not merit further consideration under the remaining steps of the sequential analysis. *Smolen v. Chater*, 80 F.3d at 1290. Thus, an ALJ's finding that an impairment is severe at step two does not compel its inclusion in the RFC at steps four and five. *Maher v. Commissioner of Social Sec. Admin.*, 474 F. App'x 609, 2012 WL 2860751, at *609–10 (9th Cir. July 12, 2012). Accordingly, the ALJ's finding that plaintiff's diabetes, obesity, insomnia, sleep apnea, and history of stent placement and cervical strain were severe impairments did not compel inclusion of limitations based on these impairments.

Furthermore, the ALJ specifically considered these impairments in assessing plaintiff's RFC. The ALJ found that the evidence failed to demonstrate that these impairments limited plaintiff's ability to perform medium work. For each impairment, the evidence either conclusively establishes no limitations, or evidence of a limitation was lacking due to plaintiff's failure to seek medical treatment or continuous noncompliance with his physicians' prescribed course of treatment. *See* AR 22-23. Furthermore, the medical opinions from both examining and non-examining sources concluded that notwithstanding plaintiff's impairments, he retained the ability to perform medium work.[4] *Id*. at 104-106, 136-137, 975.

Missing from plaintiff's argument is any discussion or citation to medical evidence demonstrating that his diabetes, obesity, insomnia, sleep apnea, and history of stent placement and cervical strain limited him to less than the RFC assessed by the ALJ. Accordingly, plaintiff fails to identify any error by the ALJ in assessing his RFC. *Thomas*, 278 F.3d at 957 ("opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

---

[4] The record does not contain a treating source opinion as to plaintiff's physical limitations.

11

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 30, 2016.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE